## The Georgia Insurance and Trust Co. *vs.* F. Dawson and P. T. Dawson.—*December* 1844.

Upon a valued policy on cargo, *tin*, shipped, or to be shipped, "at and from *New York* to *Baltimore*," the assured may recover a partial loss, for damage by sea water, caused by the perils of the seas, though the tin was not properly dunnaged and stowed.

Underwriters are liable for a loss, the *proximate* cause of which, is one of the risks enumerated in their policy, though the *remote* cause may be traced to the negligence of the master and mariners.

The liability of the ship owner to the shipper for the negligence of the master and crew, cannot avail the insurer as a defence. Upon payment of the damage, the insurer may be subrogated to all the rights of the insured against the person answerable for bad stowage and dunnage.

The act of 1832, ch. 280, is not repealed by the act of 1834, ch. 89. The latter gives to the creditors of foreign corporations an additional remedy.

APPEAL from *Baltimore* County Court.

This was an attachment commenced on the 9th October 1840, by the appellees against the appellants, upon the following contract of insurance, viz :

"Policy No. 31.    Insured $3,500.    *Baltimore,* 11th November, 1837.    In consideration of the sum of seventeen dollars, fifty cents, *the Georgia Insurance and Trust Company* do hereby insure *William Dawson and Co.,* and whom it may concern, against all risks to the amount of thirty-five hundred dollars, on three hundred boxes tin valued thereat, shipped, or to be shipped on board the schooner *Edward Vincent,* at and from *New York* to *Baltimore,* according to order of this date.    *John G. Proud & Co.,* agents.    $3.500 at one-half per cent., $17.50.    Policy 50 18."

It was accompanied with a statement of particular average, showing damage to $994.27, and the usual affidavits against the defendants, a company not incorporated by the State of *Maryland.*

The defendants appeared by consent, and pleaded *non assumpsit.*    The jury found a verdict for the plaintiffs.    The defendant moved in arrest of judgment generally.

At the trial of this cause, the plaintiffs, to maintain the issue on their part, offered in evidence to the jury, that being the owners of three hundred boxes of tin, at *New York,* they shipped the same on board the schooner *Edward Vincent,* for *Baltimore,* and proved their bill of lading for the same.

That the defendants being an insurance company, chartered by the *State of Georgia,* and not chartered by the laws of this State, but transacting business, and holding and exercising franchises in this State, by its agents *John G. Proud* and *Francis H. Smith,* who are and were citizens of the State of *Maryland,* resident in the city of *Baltimore,* and acting as such agents under the firm of *John G. Proud and Company,* insured the said tin upon the said voyage, by the aforesaid policy.    That on the said voyage, the said schooner encountered gales and storms, which caused her to leak badly ; and on the arrival of the said schooner at *Baltimore,* the said tin

was found to be damaged by salt water, in consequence of the said storms and gales, to the amount claimed by the plaintiffs.

The defendants, to maintain the issue on their part, offered in evidence to the jury, that the said tin was stowed upon sand ballast, and badly and insufficiently dunnaged, and that the risk upon said tin thus stowed, was greater than if the stowage and dunnage of the same had been usual, sufficient, and proper.

The plaintiffs, in order further to maintain the issue on their part, offered in evidence to the jury, that the stowage upon sand ballast, was usual and customary; and that the stowage and dunnage of the tin in this case was good and sufficient. Whereupon the defendants prayed the court to instruct the jury:

1st. If the jury shall believe from the evidence, that the damage done to the tin insured, was owing to the neglect of the master in improperly stowing and dunnaging the same, then they must find for the defendants; although they may also believe that the injury done to the tin was occasioned by contact with salt water, introduced by leakage of the vessel, which leakage was occasioned by storms and gales.

2nd. If the jury shall believe from the evidence, that the stowage and dunnage of the tin insured, was such as to expose it to more than ordinary risk, then they must find for the defendant, unless they shall also believe that such risk was in the contemplation of the parties at the time of effecting the insurance.

3rd. If the jury believe from the evidence, that owing to the negligent and improper manner in which the tin in controversy in this case was stowed and dunnaged, the schooner *Edward Vincent* was not sea-worthy for the safe transportation of the tin against leakage, and the ordinary perils of the sea, upon the voyage from *New York* to the port of *Baltimore*, then the plaintiffs are not entitled to recover in this case, notwithstanding the jury may believe that the said schooner was sea-worthy in other respects.

Which instruction, as asked in the *first* and *third* prayers, the court, (MAGRUDER and PURVIANCE, A. J.,) refused to grant; and as asked in the *second* prayer, the court refused, so far as it was in conflict with the instruction asked by the plaintiff's prayer.

And the plaintiffs prayed the court to instruct the jury, " If the jury believe, that at the inception of the voyage the schooner *Edward Vincent* was tight, staunch, and strong, and properly officered, manned, and equipped, having a competent master and crew; and if the jury further find, that on the voyage of said vessel from *New York* to *Baltimore*, through storms and perils of the sea, the tin in question was damaged and injured to the extent claimed by the plaintiffs in this case, that plaintiffs are entitled to recover, although the jury believe that the dunnage of said vessel and cargo was negligently fixed and arranged by the master and mariners of said vessel, and that such negligent fixing and arranging of the cargo, was the remote cause of its loss."

Which instruction the court gave. To which refusal and instruction by the court, the defendants excepted.

The defendants prosecuted this appeal.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS and MAGRUDER, J.

By ST. GEORGE W. TEACKLE for the appellants, and
By GLENN for the appellees.

MAGRUDER, J., delivered the opinion of this court.

The defendants in error, being about to ship a quantity of tin from *New York* to *Baltimore*, the plaintiff in error undertook, for the premium agreed upon, to insure the same to the amount of $3,500, shipped, or to be shipped on board the schooner *Edward Vincent, at and from New York to Baltimore.*

On the voyage, the vessel encountered gales and storms, which caused her to leak badly, and the tin insured was discovered, on its arrival at *Baltimore*, to be damaged by salt water, in consequence of the gales and storms, which the ves-

sel encountered, and for the amount of the damages done to the property insured as aforesaid, this action was brought.

These facts are not denied, but the plaintiff in error resists the claim, upon the ground that the tin insured was stowed upon sand ballast, and badly and insufficiently dunnaged, and that the risk was greater, than if the stowage and dunnage of the same, had been usual, sufficient, and proper. These facts too, the points which were raised, in the court below, require us to assume.

A verdict having been obtained by the defendants in error, a motion in arrest of judgment was made, and this because, as was contended, the remedy which is given against foreign corporations by the act of 1832, ch. 280, is taken away by a subsequent law, passed in 1834, ch. 89. This motion was properly over-ruled. The latter gives, and was designed to give, to the creditors of such corporations, an additional remedy, and cannot be interpreted to deprive the defendant in error, of the remedy which the previous law afforded to him.

The questions which remain to be decided, are presented by the bills of exceptions, taken in the progress of the trial, by the plaintiffs in error.

On the part of the defendant, it is contended, that the damage done to the tin, was occasioned by the perils of the sea, and that the gales and tempests, which the vessel encountered, being the proximate cause of the loss, they are entitled to recover, even although his adversary has found in wrong stowage and dunnage, what is called a remote cause of such damage.

Much of controversy has arisen upon the question, which is here presented, and by many it has been insisted, that although the loss be occasioned by any of the perils mentioned in the policy, yet the insurer is not liable, if there can be found another and remote cause of the loss, and it can be ascribed to misconduct, or negligence of the captain and crew, the same not amounting to barratry. Chancellor *Kent,* in the chapter of his *Commentaries,* which treats of the law of insurance, (in the edition of 1828,) refers to decisions,

47  v.2

for and against the insurer, and adds: "It may be expedient to suspend our own judgment, under such a sad uncertainty of the law, and leave the question for further judicial investigation, since an eminent judge of the Supreme Court of the *United States,* (*Justice Story,*) has thought proper to take this course." A number of decisions, both in *England* and this country have, since then, taken place on this once very vexed question, and in 1837, (see 11*th Peters* 220,) *Justice Story* said, that in the case, 10 *Peters* 507, "the court thought, that in marine policies, whether containing the risk of barratry or not, a loss whose proximate cause was a peril insured against, is within the protection of the policy, notwithstanding, it might have been occasioned remotely by the negligence of the master and mariners. We see no reason to change that opinion; and, on the contrary, upon the present argument, we are confirmed in it." In these two cases, (10 & 11 *Peters,*) are cited most of the *English* cases, in which the question was decided. The reported decisions of some of our sister States, furnish other cases, establishing the same doctrine, and this court can feel no disposition, in deciding this case, to depart from the rule *stare decisis.* It is to be understood then to be the settled law of *Maryland,* "that the underwriters are liable for a loss, the proximate cause of which, is one of the enumerated risks, though the remote cause may be traced to the negligence of the master and mariners."

It is however contended by the plaintiff in error, that the cases referred to do not settle the law of this case; that these cases only establish, that a policy, which being once attached, is not discharged by reason of the remote cause of the loss or damage sustained by the assured, but in the case now under consideration, the question is, whether the policy ever attached? The reason of this distinction, however, between this and the other cases is not perceived. The policy is on a cargo, shipped, or to be shipped on board of a vessel, *at and from New York to Baltimore.* If the policy had said not "at and from," but "from *N. York* to *Baltimore,*" the risk would have commenced only when the vessel broke ground; but as the lan-

guage here used, is "*at and from New York to Baltimore,*" it is understood, to "include all the time the ship is in port, after the policy is subscribed, and the goods are on board, &c."

The owners, &c., of the vessel, it is said, are the agents of the assured, and are answerable to the shippers for any damage, which is the consequence of bad stowage. This may be so, but still we are told, 2 *Barn. & Ald.* 82, that "a loss, whose proximate cause, is one of the enumerated risks in the policy, is chargeable to the underwriters; although the remote cause may be traced to the negligence of the master and mariners." The act of insuring, is the voluntary act of the insurer; he can prescribe the terms on which he will underwrite; may undertake as few or as many risks as he pleases, and in the policy of insurance, may, if he thinks proper, insert such clauses as will secure him against all liability, if the stowage and dunnage be not as they ought to be. If there be no such express warranty on the part of the owner of the cargo, still the underwriter may rely on the implied warranty, and is discharged, if the warranty express or implied, will exonerate him. Now, it is not pretended, that in this case the underwriter can claim to be discharged, by any express warranty. Does the implied warranty furnish him with a defence? By effecting a policy, whether it be on the ship, freight, or cargo, or the commissions or profits, to accrue upon the cargo, *the assured* is always understood to warrant, that the ship is sea-worthy, or the materials of which the ship is made, its construction, the qualifications of the captain, the number and description of the crew, the tackles, sails and rigging, stores, equipment and outfit generally, are such as to render the ship, in every respect, fit *for the voyage insured. Phillips on Insurance,* 113. (*Am. edit.,* 1823.) The policy implies the seaworthiness of the ship. *To render a ship seaworthy,* it must be staunch, and of sound materials, or rather, it must be sufficiently staunch and sound, for the employment or situation intended by the insurance. *Phillips* 113. The author then proceeds to explain, that this relates to the beginning of the risk, that the breach of the warranty, discharges the underwriter from all subsequent

liability; that the vessel must be of proper construction, must have sufficient stores and supplies, must have a skilful master and competent crew, and a competent pilot, where it is customary to take one, but no where tells us, that this warranty *ex vi termini*, implies any thing, with regard to the stowage or dunnage of the vessel, which it certainly would be unreasonable to expect, that the owners of the articles insured, would attend to.

But it is said, that the liability of the insurer does not commence, until the articles insured are placed as they ought to be.   In *3rd Kent*, 310, (*3rd edit.*,) the doctrine is not so laid down.

There would seem to be no good reason for this, as it is generally understood, that afterwards, and even after the vessel has left the port for some time, it is the right, and generally the duty of the master, to arrange the cargo differently, to *trim* the ship; and it is not contended, that because of a mistake then committed, the underwriter must be discharged.

The owners of the ship, it is said, are answerable to the shipper, for any damage in consequence of bad stowage.   It does not thence follow, that the underwriter is discharged.   If damages are to be recovered, because of the manner in which goods on board of a vessel are stowed away, it would seem to be but right, that in the action, which is to decide whether the damage was the result of bad stowage, the owner should be the party defendant, and that such a question should not arise in an action, upon the policy of insurance; and who is so fit a person to be the plaintiff in the action, to recover damages for any such negligence or unskilfulness, as the insurer himself, who by relying on such a defence, proves, that he is in possession of the proof, and if there had been no subsequent loss or damage of the articles insured, might have retained the premium, and concealed the damage occasioned by the bad stowage, which perhaps, lessened the value of the article when sold?   If the insurer be, *as he alleges*, in possession of proof, to fix the loss of the cargo upon the owner or captain, he becomes entitled, upon payment of the amount of

he loss or damage, to stand in the place of the owner, and to be subrogated to all his rights against the person answerable for bad stowage or dunnage.

The conclusive answer however, to all that was urged on this subject, is to be found in the decisions alluded to, in *England* and *America,* and which have established, that in case of loss, the consequence of the negligence or fault of the assured, their agents or servants, the underwriters will be liable, provided the proximate cause of the loss or damage be one of the enumerated risks in the policy. The good effects which are anticipated by an adherence in such cases to the maxim, "*causa proxima, non remota spectatur,*" would be entirely lost, if in an action upon the policy, the defendant might insist upon one, yet more remote than the remote cause, which it is settled, can furnish the insurer with no defence. In the case of *Waltron vs. Maitland,* 5 *Barnwell & Alde.* 174, the judge said, "no decision can be cited, wherein such a case, (the loss by a peril of the sea,) the underwriters have been held to be excused, in consequence of the loss having been remotely occasioned by the negligence of the crew. I am afraid of laying down any such rule. It will introduce an infinite number of questions as to the *quantum* of care, which, if used, *might* have prevented the loss." *Justice Story*, in delivering the opinion of the court, in *Waters vs. Louisville Insurance Company*, observes, "if negligence of the master or crew were, under such circumstances, a good defence, it would be perfectly competent and proper to examine on the trial, any single transaction of the whole voyage, and every incident of the navigation of the whole voyage, whether there was due diligence, in all respects, in hoisting or taking in sail, in steering the course, in trimming the ship, in selecting the route, in stopping in port, in hastening or retarding the operations of the voyage; for *all these* might be remotely connected with the loss. If there had been more diligence, or less negligence, the peril might have been avoided, or escaped, or never encountered at all. *Under such circumstances, the chance of a recovery upon a policy, for any loss, from the peril insured*

*against, would of itself, be a risk of no inconsiderable hazard :*" and surely, this reasoning, applies to the case now under consideration, and to the defence which is relied on. Policies of insurance would seldom be contracts of indemnity, if, when the actual peril insured against has occurred, the payment of the loss depended upon every act, in regard to the property insured, which, by possibility, might have increased the risk of loss.

The court can discover no error, either in the instruction which was given, at the instance of the counsel, for the plaintiff below, or in the refusal to give the instructions, which were asked by the defendant below.

JUDGMENT AFFIRMED.