It cannot be successfully questioned that a loss arising from collision is a loss by peril of the lakes and within the terms of the policy. (Phil. on Ins. 636; Smith v. Scott, 4 Taunt,
126; Peters v. The Warren Ins. Co., 14 Peters, 99; Hale
v. Wash. Ins. Co., 2 Story's R. 176.)
The insurance was upon "the body, tackle, apparel and other furniture" of the Ontario. That property was not injured by the collision, but it was subjected to a lien to the extent of the injury done to the Utica, because it appeared that the collision was caused by the carelessness and negligence of the master and crew of the Ontario; and it is claimed that it is brought within the policy, because it was subjected to such lien.
The collision itself gave no lien on the Ontario to the owners of the Utica. But the fault being wholly on the part of the Ontario, the owners of the Utica had their election either to proceed in personam against the owners of the Ontario, or inrem against the property, and they chose the latter remedy.
It was held in this state, in Grim v. The Phœnix InsuranceCo., (13 John. 451,) where the vessel, among other risks, was insured against fire, that the insurers were not liable for loss from fire which was occasioned by the carelessness of one of the crew, not amounting to barratry. And such were the earlier decisions in Massachusetts and Ohio. (8 Mass. R. 308; 5 OhioR. 436; 7 id. 2.) But in those states, and in others, that doctrine has been expressly overruled. (Copeland v. New *Page 21 England Ins. Co., 2 Metc. R. 432; Perrin v. ProtectionIns. Co., 11 Ohio, R. 147; 10 Robinson's R. 164; 2 Gill
365; 7 Barr, 223; Patapsco Ins. Co. v. Coulter, 3 Peters,
222; Columbia Ins. Co. v. Lawrence, 10 id. 507; Waters v.Merchants' Ins. Co., 11 id. 213; 14 id. 99; 2 Story's R. 176.) And the cases last cited are in accordance with the English decisions. (2 Barn. Ald. 73; 5 id. 74; 5 Mees. Welsb. 14; id. 476, 405; 8 id. 895; 7 Barn. Cress. 219; id. 794, note a.) It is apparent that the weight of authority is against the holding, in Grim v. The Phenix Ins. Co., and such is the opinion expressed by Chancellor Kent, (3 Kent's Com. 300, 306, 307) and though that case has never been expressly overruled in this state, it seems to have been virtually abandoned, (3 Hill 253; 1 Selden, 469, 478,) and I think we are bound to hold the rule to be as it was stated by Verplanck, senator, in The Am. Ins. Co. v. Bryan (26 Wend. 583) that "underwriters are not discharged from risks expressly assumed, because the losses were incurred remotely or consequently by the default of the master or mariners."
If this were therefore a case of injury caused by the collision, I should feel bound to hold that the carelessness or negligence of the master and crew would form no defense.
But the vessel insured was not injured by the collision. The other colliding vessel sustained the injury. That vessel is not covered by the policy. To charge that loss upon the owners of the Ontario, it was necessary to do more than simply to prove the collision. It was indispensable to the recovery, to show that the collision was owing to the carelessness or negligence of the master and crew of the Ontario. It is no defense as to a loss upon the property insured, that it was caused by the carelessness of the master and crew. But does the policy extend to injuries to other vessels caused by such carelessness? That is the question presented for our determination.
There are but two reported cases in this country upon this question. In Hale v. The Wash. Ins. Co., (2 Story's Rep. 176,) and Sherwood v. The General Mutual Ins. Co. (1Blatch. *Page 22 C.C.R. 251,) it was held that the policy extended to such a loss. But both these cases are overruled by the supreme court of the United States in 14 Howard 351, where the judgment of the circuit court in Sherwood v. The Gen. Mutual Ins. Co. was reversed. The whole question is there discussed with great ability by Mr. Justice Curtis, and his reasoning is conclusive to my mind against the claim. It cannot be necessary to repeat his argument. So far therefore as the United States courts are concerned, it must now be regarded as authoritatively settled that such a claim cannot be maintained, when, as in this case, the collision was chargeable solely to the carelessness or negligence of the persons in charge of the insured vessel.
On this point, there has been no reported case in the state courts of this country. It is said that just before the late decision of the supreme court of the U.S., a case had been decided by the supreme court of Massachusetts in accordance with the views expressed in 2d Story; but it has not been reported and we have not been furnished with a copy of the opinion. We have no means therefore of knowing its extent or application. Whatever they may have been, as it was no doubt based upon the two decisions of the U.S. circuit court, which have been since overruled, it can no longer have any foundation whatever as authority.
The judgment of the supreme court of the U.S. in Sherwood v.The Mutual Ins. Co. is in accordance with the well settled English law; (De Vaux v. Salvador, 4 Ad. El. 420; 31Eng. Com. Law, 104;) and also with the French law. The rule is thus stated by Ledru Rollin, in his Repertoire Générale, Journal du Palais, 2 vol. 17, s. 270, Assurance. "Les assureurs ne répondent pas de'l abordage occasionné par la faute du capitaine, ou de l'equipage ni de la prise arrivée, parce que le capitaine n'a pas su éviter l'ennemi, ou parce qu'il ne s'est pas suffisamment défendu, ou parce qu'il s'est volontairement écarté de l'escorte avec laquelle il devait voyager," (citing
3 Pardessus, No. 771 Boulay Paty, to. 4, p. 66.)
It is believed such is also the law in all the other maritime *Page 23 
countries of Europe in which the civil law is resognized as the basis of their jurisprudence. Pothier, in his "Traité du Contrat d'Assurance," (§ 50,) states the rule with great clearness and precision, as follows:
"Abordages, c'est a dire lorsque mon vaisseau, que j'ai fait assurer a été endommage par le heurt d'un antré vaisséau. L'assuerur est tenu de m'indemniser du dommage arrivé a mon vais seau par cet abordage, lorsqu'il est arrivé par un cas fortuit, comme dans une tempeté; ou méme lorsqu'il est arrivè par la faute du maitre d'un autre vaisseau; Auquel cas je dois céder à l'assureur mes actions entre celui par la faute de qui est arrivé l'abordage, et contre son commettant. Mais si c'est par la faute du maitre de mon vaisseau que l'abordage est arrivé, l'assuréur n'en este pas tenu, s'il n'y a une clause particuliére que l'assureur sera tenu de la barratiné du capitaine." (Se also Emerigon, 329; Boucher, 1500, 2.)
Similar opinions have been expressed by writers on insurance, in our own tongue. (1 Phil. on Ins. 636; Marsh. on Ins. 493;Park. Mar. Ins. 131; Broom's Leg. Max. 167.) Arnold (2 Arn.on Ins. 775.) says when the loss is not proximately caused by the perils of the sea, but is directly referable to the negligence or misconduct of the master or other agents of the assured, there seems little doubt that the underwriters would be thereby discharged."
It is conceded on both sides of this question, that it is governed by the maxim, (Bac. Max. Reg. 1,) In jure, non remota causa, sed proxima, spectatur. The difference of opinion arises from its application. What is the proximate cause, in this case, of the injury? If an injury to the vessel was the immediate result of the collision, the latter would then be the proximate cause, and being within the terms of the policy the defendants would be liable. But can it be said that the collision is the proximate cause, when, of itself, it inflicts no injury, and when it is necessary to prove something more, viz. the carelessness or negligence of the master and crew, to give even a right of action? The plaintiff establishes no right, by simply proving a collision, *Page 24 
because from that alone no damage accrued. The right to damage against the owners of the Ontario, rested exclusively upon the fault of those in charge, to whose neglect the collision was solely chargeable. If that ingredient be taken away, the case is emasculated. Curtis, J. said in The Mutual Ins. Co. v.Sherwood, "In applying this maxim, we look for the proximate cause of the loss; if it is found to be a peril of the sea, we inquire no further. We do not look for the cause of that peril. But if the peril of the sea, which operated in a given case, was not of itself sufficient to occasion and did not in and by itself occasion the loss claimed; if it depended upon the cause of that peril whether the loss claimed would follow it, and therefore a particular cause of the peril is essential to be shown by the assured, then we must look beyond the peril to its cause to ascertain the efficient cause of the loss. In such a case," said the learned judge, "the real cause is the negligence, and unless the policy can be so interpreted as to insure against all losses directly referrible to the negligence of the master and mariners, such a loss is not covered by the policy."
In De Vaux v. Salvador, above cited, Lord Denman, C.J. said, "The ship is driven against another by stress of weather; the injury she sustains is admitted to be direct, and the insurers are liable for it. But the collision causes the ship insured to do some damage to the other vessel. And whenever this effect is produced, both vessels being in fault, a positive rule of the court of admiralty requires the damage done to both ships to be added together, and the combined amount to be equally divided between the owners of the two. It turns out that the ship insured has done more damage than she has received, and is obliged to pay the owners of the other ship to some amount, under the rule of the court of admiralty. But this is neither a necessary nor a proximate effect of the perils of the sea; it grows out of an arbitrary provision in the law of nations from views of general expediency, not as dictated by natural justice, nor (possibly) quite consistent with it; and can no more be charged on the underwriters than a penalty incurred by contravention of the *Page 25 
revenue laws of any particular state, which was rendered inevitable by perils insured against."
The plaintiff's claim seems to me to be as adverse to principle as it is unsupported by authority. If we sustain it, we shall commit, in my judgment, the great fault of establishing for our own state, a rule of law in conflict with the now settled doctrine of the highest federal court, and at variance with the often expressed judgment of the whole civilized world. Such a decision could not fail to be exceedingly embarrassing, for in no department of the law is uniformity more desirable, than in that which regulates the rights and obligations of those engaged in commercial pursuits. The law of the maritime world should be limited by no national boundaries, but should be as universal as the commerce which it protects and regulates.
I think the judgment of the supreme court should be reversed, and judgment should be given in favor of the defendant on the demurrer.
Judgment accordingly.