VIRGINIA LYNN *vs.* GEORGE F. GEPHART and others.
VIRGINIA LYNN *vs.* JOHN G. LYNN and JAMES M.
SCHLEY and others.

*Conversion—Right of Dower in the Equitable estate of the
Husband—Act of Assembly—Dower.*

The inclination of Courts of Equity, in determining as to the conversion
of realty into personalty, or personalty into realty, is not generally to
change the quality of the property, unless there is some clear act or in-
tention by which a definite character, either as money or as land, has
been unequivocally fixed upon it throughout. If this intention do not
clearly appear, the property retains its original character, there being no
equity between the heir and next of kin in such cases.

A deed was executed by numerous persons, conveying certain real
estate to a trustee, who was thereby empowered and directed to convey
the legal title so vested in him, to such person or persons, company or
companies, in such manner and under such restrictions as a majority of
the grantors should direct him in writing to do. It also declared that
the object of the grantors, as to a part of said real estate, was merely to
vest the legal title of the same in the trustee for the greater certainty
and convenience of conveying the same to purchasers, and thereby
avoiding the legal difficulties that would result should any of the grant-
ors die, leaving infant heirs. The trustee was also required to discharge
certain judgments and mortgages, existing against some of the grantors,
and which were liens on their respective shares of said property, out of
their proportion respectively of the purchase money, instead of paying
it to them. The trustee was also directed as to the distribution of the
proceeds of sale of the trust property, among the parties entitled.
HELD:

That there was no conversion of the real estate conveyed by the deed of
trust,—that the grantors in the deed retained an equitable interest in
the property until sold, and in the proceeds thereof, after sale, to the
extent of their respective shares, which are to be treated as real estate.

And that the share or interest of a deceased grantor in all the estate con-
veyed by the deed of trust is liable to be sold for the payment of his
debts, in aid of his personal estate; the proceeds thereof to be applied
first to the satisfaction of an existing lien thereon, and the surplus to be
subject to the claim of dower by his widow, in preference to all other
liens, not acquired prior to her marriage, or created afterwards by her
husband with her consent.

Lynn *vs.* Gephart *et al.* Lynn *vs.* Lynn and Schley *et al.*

Under the Act of 1818, ch. 193, sec. 10, a widow is entitled to dower out of an equitable estate of inheritance, held by her husband, or not parted with at the time of his death, without prejudice to prior liens.

The right of dower has always been deemed a meritorious one, founded on the highest consideration, and favored in law.

APPEALS from the Equity side of the Circuit Court for Allegany County.

Prior to the third day of October, 1849, the children and descendants of David Lynn, deceased, were seized and possessed as tenants in common, in fee, of a valuable real estate, situated in Allegany county, which had been devised to them by the will of their ancestor. The devisees, of whom George Lynn, the husband of the appellant, was one, took equal shares under the will. A part of the land devised to them, known as "The Rose Hill Estate," was subject to the life estate therein, of the widow of the testator; this property adjoined the town of Cumberland, lying chiefly within its corporate limits, on the west side, and having a considerable front for wharves on the basin of the Potomac, and also an extensive area suited for building sites and other purposes. The construction of the Chesapeake & Ohio Canal and of the Baltimore & Ohio Railroad, had opened to the said town a prospect of rapid growth in business and population, and consequently greatly enhanced the value of said estate. The devisees, therefore, with their husbands and wives, thinking to make their common property more productive by having it divided into lots and parcels best adapted for sale, and ready to meet the demands of purchasers, and at the same time to provide for a transfer of titles with the least inconvenience to themselves, united in choosing Erastus Edgerton as their common agent and trustee, to whom they conveyed said property, a part being excepted, by their deed bearing date the third day of October, 1849, for the purposes therein declared. Edgerton having afterwards removed to New York,

James M. Schley was substituted in his place, and Edger-ton, with his *cestuis que trust*, (the grantors in the afore-said deed to him) united in executing a deed of trust to the said Schley, bearing date the 17th day of December, 1850. The appellant was one of the grantors with her husband in both deeds, and the property, or at least the greater part of it, was held under the deed to Schley at the time of her husband's death, and is still held by him. And the two suits in equity, instituted in the Circuit Court for Allegany County, and now before this Court on appeal, are the suits of creditors of her said husband, George Lynn, deceased, George F. Gephart claiming, in the one case, a decree for the sale of his real estate, for the benefit of creditors generally, and John G. Lynn in the other, a decree for the special benefit of himself, who claims to be a preferred creditor. The Court passed a decree in each case similar in terms, ordering a sale of the real estate of George Lynn, or of so much thereof as might be necessary, for the payment of his debts, and excluding his widow from all claim to dower in the same. From these decrees the widow appealed. The trusts and objects of the deed to Schley, together with other facts in the case will be found sufficiently disclosed in the opinion of the Court.

The cause was argued before BOWIE, C. J., BARTOL and CRAIN, J.

*J. H. Gordon, William J. Read* and *Samuel M. Semmes*, for the appellant.

The only question for decision in this case is, whether the deed of the 17th December, 1850, operated as an equit-able conversion of the land thereby conveyed, into person-alty, or whether it operated to divest Virginia Lynn, the wife of George Lynn, of her right of dower in said lands? It is contended on the part of the appellant, that no con-

version took place under the deed until an actual sale by the trustee. The doctrine of equitable conversion has grown out of the practice of Courts of Equity, in cases in which property is brought within their jurisdiction for distribution. In such cases, for the purpose of facilitating their own proceedings upon application by the proper parties, they will treat those things as done, which they would decree to be done from the time they should have been done. 2 *Story's Eq. Jur.*, s. 790, *and note* 2. But this doctrine is only applied for the purpose of carrying out the intention of the parties, and giving to their agreements, wills or deeds, the precise effect upon their property which they intended them to have. *Story's Eq. Jur.*, s. 791, 792, 793; also, *secs.* 1212, 1213, 1214.

It follows, therefore, that the first inquiry should be, what was the object of the grantors in making the deed? Did they intend immediately to change the character of their property from real to personal? or did they only intend to put the property in a position which would enable them to convert it into money, in case a favorable opportunity should be presented for that purpose? In determining these questions, the deed itself is our best guide. By reference to the deed, we find it conveys " The Rose Hill Estate," "excepting thereout, and which is not intended hereby to be conveyed, all such parts of the same as have been sold and conveyed since the death of David Lynn, and all such parts as said parties are now under contract to convey; also all that tract of land called 'Sampson's Riddle Solved,' to James M. Schley, his heirs and assigns forever, for the following uses," &c.:

" *First*. He shall hold for the exclusive use of Mary Lynn, the widow of the testator, during her life, and as she now enjoys the same under the will of her said husband," the land on which stands the dwelling-house, &c.

The deed also provides in the same paragraph: That " the said Schley shall also hold the land lying south of

Flat street extended, to meet Allegany street, and not included in the assignment made by the parties of the first part, with the Mount Savage Iron Company, for wharves and so forth, and which is not included in the garden reserved for the widow of the testator, subject to the disposition which may be made of the same by the parties of the first part, or a majority of them, who may be of full age at the time of such disposition or sale." The deed then provides that Schley shall convey the legal title so vested in him to such person or company as the majority shall direct in writing. It also provides that in case of sale, the expenses shall first be deducted from the proceeds, and the balance to be distributed among all the grantors according to their respective rights thereto. The deed then recites the object of conveying the last named land to be "merely to vest the legal title of the same in James M. Schley, for the greater certainty of conveying the same to purchasers, and thereby avoid the legal difficulties that would result from the death of any of the parties leaving infant heirs." Then the balance of said lands conveyed to said Schley "shall, by said Schley, be divided and laid off into such streets, lanes, alleys, lots and portions, as said Schley, John G. Lynn and James C. Lynn, or a majority of them, shall determine to be most promotive of the best interest of all parties concerned." And the same shall be sold in such lots and parcels, and on such terms as Schley, John G. and James C. Lynn, or a majority of them, shall determine.

The deed also provides for the appointment of a new trustee if Schley should die, by the parties of the first part, who may then be living and of full age. This case, like all others of the kind, must be determined by the deed itself, and the surrounding circumstances, so far as they reflect light upon the transaction. The cases referred to can only assist in guiding us to a correct conclusion by analogy, which must be closer or more remote in propor-

tion as their facts happen to agree or disagree with those now before us.  For instance, there are cases in which the deed or instrument provides in specific language for the "sale and conversion of real estate into money," without any restriction or limitation on the power of the trustee, and in such cases there can be no mistake about the intention of the grantor.  There are other cases in which real estate is to be sold "for the purpose of paying debts or pecuniary legacies."  And the intention of the grantor or testator to convert, is equally clear in these cases to the extent of the debts or legacies to be paid.  But the conversion goes no further than is necessary to pay the charge upon the land.  And if the trustee or executor sells the real estate, in execution of the power, for more money than is necessary to pay the debts or legacies, the balance will be real assets in his hands, which goes to the heir-at-law, and not to the personal representative.

The case of *Biggs vs. Anderson*, 5 *Sim.*, 424, is a case of absolute conversion, belonging to the first class, because in that case "he desired to convert his real and personal property into money for the payment of his debts, and the residue after paying debts, to be held by the trustee for "the grantor, his executors," &c.

For the second class of cases, see *Leigh & Dalzell on Conversion*, 93, 94, &c.  These cases, however, afford very little assistance in determining what the grantors in this deed intended, and we must go back at last to the deed, to ascertain their intention in that respect.

The trustee gets no commission for disposing of a part of the trust property, and is to convey as directed by the majority of the grantors in writing.  The deed states that the conveyance of this part to Schley was only to avoid the difficulties that would result from death of any of the grantors leaving infant heirs.  This is only a dry trust. The property remains under the entire control of the grantors, and no conversion can take place with regard to it,

without their consent.   It cannot therefore be contended that this part of the land was converted into money. Taking the whole deed together it is manifestly the intention of these grantors to put their real estate into the hands of the trustee.   So then in case of anything occuring that might make it for their interest to sell, they could then determine for themselves, through the parties provided in the deed, to take advantage of a favorable opportunity without the hinderance of infant heirs.   The authorities clearly show that where there is discretionary power in another than the trustee, to determine the question of sale or no sale, there is no conversion.   In *De Beauvoir vs. De Beauvoir*, 3 *House of Lords Cases*, 524, where trustees have a mere power with the consent of a person in possession of certain settled estates, to lay out personal property in the purchase of land to be settled to the same uses, no absolute conversion takes place.   1 *Lead. Cas. in Eq.*, 565, *margin*.   So where money was to be laid out in the purchase of land, " with the joint approbation and consent of the husband and wife, and not without," and no approbation or consent was given by them, the money was considered as unconverted.   *Davies vs. Goodhew*, 6 *Simons*, 585 ; 1 *Lead. Cas. in Eq.*, 565, 567, *margin*.

This case is exactly in point, and the analogy between them complete.   In the case referred to the money was to be laid out in land, *" with the joint approbation of the husband and wife."*   In this case the land was to be sold. In one case, *" when the majority shall direct in writing;"* in the other, *" at such time or times, and in such lots or portions, as J. G. and J. C. Lynn, together with Schley, or a majority of them, shall determine."*

And if the sale take place without the consent of the parties to be consulted, the proceeds will be considered as lands.   And whenever there is a discretionary power vested to convert, the conversion is not absolute.   1 *Leading Cas. in Eq.*, 677, *margin*.

It is contended that because the appellant joined in the deed to Schley, that therefore she has no dower in the land. But if the title were only placed in Schley for convenience, and not for the purpose of changing or converting it into land, her part of the deed is like all the others, and her dower interest stands in the land like all the other interests, and if no sale be made, or the object of the trust fails and is never accomplished, her dower would result to her as an interest in real estate, just as the interest of any of the other parties would go to them in that case.

The learned Judge who decided the case below, held that no conversion had taken place, and that the parties grantors, were seized of an equitable estate in fee of the lands ; but that the appellant was not entitled to dower notwithstanding, either under the deed, or by virtue of the Act of 1818, ch. 193, sec. 10.

In the opinion of the Circuit Court, this Act of 1818, ch. 193, sec. 10, is *to be strictly construed,* and it is thought by that Court that " so far as the Act has undergone a construction by the Court of Appeals of this State, it has been confined to cases of vendor and purchaser, where purchase money has been paid in whole or in part, and the case of an equity of redemption, where, upon payment of the purchase money in full, in the one case, and of the mortgage debt in the other, the purchaser and mortgagor would be entitled to conveyance of the land itself."

Chancellor Kent understood our Act to vest widows with a title to dower, in all trust estates, in which the husband held a beneficial interest, and that she was only excluded in cases where he was seized in fee of the dry technical title, by way of trust or power, for the sole interest of others, as the widow of Schley would be, if claiming under his seisin as trustee in this case. 4 *Kent's Com.,* 45. The words of the Act explicitly support this

view of the Chancellor, and their literal meaning cannot, upon any fair construction of the Act, be qualified, or their effect limited, by the subsequent words used, except to prevent the Act from operating to the prejudice of claims for the purchase money, or other liens on the land. In the case of *Hopkins et al. vs. Frey*, 2 *Gill*, 359, the Court of Appeals, in its exposition of said Act, say, "The words, (that is the words of the Act,) it is believed, are sufficiently explicit to prevent the law from operating to the prejudice of the rights of any, *but creditors, heirs, and the devisees in a will, made after its passage.* In the case of *Mantz vs. Buchanan*, 1 *Md. Ch. Dec.*, 205, Chancellor Johnson says, "there cannot be a question that, under the Act of 1818, chap. 193, sec. 10, widows are entitled to dower in lands held by equitable title in the husband; for the Act *in terms declares*, that widows shall be entitled to dower in lands held by such title. He expressly decides in that case, "that although a wife joins her husband in subjecting the land to an incumbrance, such as a mortgage, for instance, she has a right to call upon the personal representatives of her deceased husband to apply the personal assets to the extinguishment of the mortgage debt, so as to free her dower from the incumbrance." By specifying, as the Act does, what particular claimants are not to be prejudiced by it, we have the stronger reason for insisting that claimants of no other kind were to be saved from its operation. We had a right to expect that the widow's right to dower in her husband's share of "The Rose Hill Estate," so far from being ignored *in toto* as it has been, should not have been regarded as even questionable, except in favor of purchasers under the deed to Schley, or of claimants showing themselves to be within the privilege of the Act of Assembly. But the dowress had no claimant or purchasers of that kind to contend against before the Circuit Court. Her only competitors were creditors of her hus-

band, of whose claims, as appears from her answer, she knew nothing. The terms of the Act are explicit, and leave no room for doubt or equivocation.

*James M. Schley, C. B. Thruston* and *G. A. Thruston,* for the appellees:

The appellees think that the Circuit Court erred in deciding that the interest of George Lynn in "The Rose Hill Estate" and in the "Wharf Property," was real estate, and as such liable to be sold under a creditors' bill, and that they were right in determining that the appellant, the widow of the said George, was not entitled to dower in said property or its proceeds. The first question which it is proposed in behalf of the appellees, to discuss, is the effect of the deed of trust to James M. Schley, which was executed and acknowledged with all the formalities requisite to the conveyance of real estate in fee simple.

It will be contended, therefore, that after the execution and delivery of that deed, the interest of George Lynn in the property therein conveyed was no longer *real estate,* but a mere chose in action, or right to receive under that deed and in pursuance of its provisions, the proceeds of the sales as made from time to time, and that a conversion by such deed was wrought of *real* into *personal* estate. Upon reading said deed of trust, the Court will perceive that the absolute fee simple title has passed to the said James M. Schley, his heirs and assigns forever, both in the granting part of the deed, and in the habendum, to be held by him upon uses and trusts in the said deed set forth.

From a consideration of this deed of trust as a unit, it is manifest that it was the intention of the parties who executed it, that all the real estate, except that portion of it lying south of Flat street, &c., should be sold and converted into money; every contingency which could in the

course of human events prevent or put a stop to such conversion was carefully guarded against. Such as the event of Schley's death, his physical inability, the death of either of the parties of the first part, leaving infant children, or even the death of any of the parties of the first part leaving adult children. For it is distinctly provided in the deed of trust, that in the case of the death of Schley, or his physical inability to execute the trust, a majority of the parties of the first part, except Edgerton, living at the time of such death or disability, should be empowered to appoint a new trustee to execute the provisions of the deed. The words in this connection, "and of full age," were mere surplusage—as all the parties of the first part were of full age. This distinction is confined to the parties of the first part *themselves*, and is not extended to their heirs or representatives.

The deed of trust contains a distinct declaration, that all the property conveyed thereby was to be sold. It reads, "it shall not be necessary *immediately* to survey and divide all said property *to be sold* under the provisions of this deed," &c. This provision thus declaring that it was all "to be sold," it was intended to say, that it would not be necessary to sell it *immediately*.

Again, the particularity with which the deed makes provision for the distribution of the purchase money, and the provisions for paying off liens against the distributees, and the payment of the charges against certain of them, created by the will of David Lynn, deceased, abundantly prove that the parties contemplated a conversion of the land into money under the provisions of the deed of trust. There are two species of trusts, *simple* trusts and *special* trusts. In simple trusts the *cestui que* use has the *jus habendi* and *jus dispondi*, and the Statute of Uses executes the trusts. In special trusts the *cestui que trust*, where *solely* intrusted, may elect not to have the land converted into money, or the money into land, and where there are

any provisions of the trust other than for his benefit, by paying annuities, &c., he may provide for that, and elect to keep the estate as it is.

But, until the *cestui que trust* or joint *cestuis que trust* countermand the specific execution, the special trust will proceed. *Lewin on Trusts*, 496, 497, *mar.*

In these cases of *special* trusts, even where a right of election exists in the *cestui que trust* to have the property remain as real estate, its character of personal estate in equity, impressed upon it by the will or deed, remains until such election is made. It is the instrument which evidences the intention to have the property converted, that works the conversion in equity, which conversion remains impressed upon it, until the party having a right to make the election, does actually make it. In cases of *special* trusts, where the trustee has certain active duties to perform in relation to the trust property, the Statute of Uses does not execute the use in the *cestui que use,* but the legal title passes to the trustee, and remains in him ; for otherwise, the trustee would not be able to perform the duties imposed upon him by the deed or will. 1 *Cruise's Digest*, 416, 417, *title* "*Trust,*" *chp.* 1, *sect.* 20 *to* 26 *inclusive.* *Ware et al., vs. Richardson*, 3 *Md. Rep.*, 505, 547.

The case cited in 1 *Leading Cases in Equity, page* 676, 677, *mar.*, shows how strongly the Courts will give countenance to this doctrine of conversion, when, from any expressions in the instrument, an inference can be drawn, that it was the intention of the testator, that a certain species of conversion should take place—although he has confided an option in that respect in the trustee. It is deemed proper to quote this whole clause :

"But although conversion is apparently optional, as where trustees are directed to lay out personalty, either in the purchase of lands of inheritance or at interest, or in land or some other securities, as they shall think most fit and proper ; yet, if the *limitations* are *adopted* only to

real estates, so as to manifest the testator's intention that land shall be purchased, the money must be considered as land, although it be not actually so invested by the trustees. Where a conversion is to take place, at the request of certain persons, if the words of the request are merely inserted for the purpose of enforcing the obligation to convert, although a conversion has taken place without consent, it will be considered to have been properly made. But where, however, words requiring the request or consent of parties to a sale, are inserted for the purpose of giving a discretion to them, if that sale takes place without their request or consent, the proceeds of the sale will still be considered as land." The case under consideration is even stronger for the conversion, than where the conversion is to take place upon the request of a third person. And this, though at the death of the devisor or intestate, the property remains unsold. *Lewin on Trustees,* 676, 677, *mar.*

The appellant, the widow of George Lynn, joined with him in the execution of the deed of trust to James M. Schley. This deed was signed and sealed by her, and acknowledged with all the formalities required by the Act of 1830, ch. 164, secs. 3 and 4. This Act declares that a married woman shall not be barred of her right of dower in her real estate, unless she signs, seals and acknowledges the deed, in the mode therein prescribed. The fourth section distinctly and pointedly declares, that if she do so sign, seal and acknowledge, she shall be barred of her dower. It is clear then, that this widow is barred, unless, as is contended upon the other side, by the operation of the deed itself, an equitable title to these lands is vested in the husband, such as would entitle her to dower under the Act of 1818, ch. 193, sec. 10. On behalf of the appellees, it is contended that no equitable *title to lands* is by the operation of this deed, vested in the grantors.

There can be no doubt that a sale and conveyance by Schley under the provisions of this deed of trust, as well after as before the death of any of the grantors, would convey the land to the purchaser, free from dower of any of the married women who executed that deed.

The whole object and intent of the deed of trust would be defeated, if these married women, upon becoming widows, could claim dower in the land. If they had a dower interest, Schley could not convey a perfect title, unless they joined therein in the deed. If such be the case, then their joining in the deed of trust was an act without meaning. If such were the law, then a party who owned lands, could not, in conjunction with his wife, execute a deed of trust to a trustee, to lay the same off into town lots, with the express power to sell, receive the purchase money and execute conveyances, and directing the trustee to pay over the proceeds to himself. Because, if the principle contended for on the other side be correct, the direction, that the proceeds should be paid over to himself, revests him with the equitable title to the lands, which could only be conveyed out of him by the execution of another deed to the purchaser from the trustee, and in which to bar dower, the wife would be obliged to join.

The Act of 1818, ch. 193, sec. 10, does give dower to widows "in lands held by equitable title in the husband." And the Act itself, upon its face, distinctly shows what is meant by "lands held by equitable title." As it provides that such claim of dower shall not prejudice any claim for the *purchase money* of such lands, or other lien on the same. The equitable title here meant, is where the husband has purchased land, and has not received a conveyance for the same, or where he had the legal title, and had passed it out by mortgage, or other instrument, before marriage, creating a lien on the same, upon the payment of which lien he would be entitled to a

reconveyance. The equitable titles to lands under this Act, has reference exclusively to cases where the husband has a right under certain circumstances, such as the payment of the purchase money, or the satisfaction of a mortgage, where any such exists, to demand a deed; or where he owes nothing upon the lands, to demand the legal conveyance. Dower at the common law was strictly confined to lands of which the husband had *legal* seizin in his lifetime, and the sole object of the Act of 1818 was to give dower where there was an equitable seizin of the husband. *Hopkins et al. vs. Frey*, 2 *Gill*, 364.

And this Act of 1818 has been so strictly construed, that if the husband, without his wife, conveys in his lifetime lands to which he has an equitable title, the wife upon his death has no dower. *Purdy vs. Purdy*, 3 *Md. Chy. Dec.*, 547.

Bowrn, C. J., delivered the opinion of this Court.

As these appeals involve principles common to both, and which control the relief prayed in each, they have been argued together, and will be decided and dispos-d of as one. The appellee Gephart, on the 26th December, 1860, filed a creditors' bill, charging that / George Lynn, deceased, had died intestate, indebted to him and others in large sums, without leaving personal estate sufficient to pay his debts, but seized of real estate, which descended to his heirs, and prayed the same might be decreed to be sold for payment of debts, and made the appellant his widow, his heirs at law, and his administrator only, parties. Subsequently, Messrs. John G. Lynn and James M. Schley, claiming to be creditors of the deceased, filed their petition in the cause, setting forth the filing of the bill and its object, but alleging it did not specify what real estate the deceased died seized of; that the deceased, with others, had executed a deed of trust, therewith exhibited, dated 17th of December,

1850, by which certain lands were conveyed to said James M. Schley. The petitioner Lynn claimed a lien on George Lynn's share of the same, and the petitioner Schley as a creditor, and prayed that they might be made defendants in the cause, in order that it might be determined whether the said lands were liable to be sold under the creditors' bill.

The prayer of the petitioners being granted, they filed their answers, setting out their claims, and insisting that by virtue of the deed of trust the interest of George Lynn in all the lands therein described was converted into personalty, and not liable to be sold, at the instance of the creditors, as real estate.

John G. Lynn claiming a lien upon all proceeds of sale to be made by James M. Schley, under the deed of trust, to the extent of the interest of George Lynn therein, and also, upon the wharf property and dues as by certain agreements, dated respectively the 8th of September, 1849, and the 21st of October, 1852.

James M. Schley, trustee, claiming, as creditor, a balance of $16,666.66⅔, as by an agreement between himself, his co-petitioner, and George Lynn. The respondent, John G. Lynn, further relied on his bill of complaint, filed 21st of March, 1861, against Virginia Lynn, James M. Schley *et al.*, claiming an equitable lien on the proceeds of the trust property aforesaid, as far as George Lynn was entitled to a share thereof, and in such property as remained unsold, including the Wharf and Cement property. The answer of Virginia Lynn, widow of George, (the appellant in each of these cases,) admits seizin of George Lynn and others, as tenants in common, during the life of said George, prior to the 3d of October, 1849, in the property described in the bill of complaint, subject to the life estate of Mary Lynn, widow of David. She admits the execution of the deed of trust by her husband and others on the 3d of October, 1859, to James

M. Schley, but insists its object, as declared in the deed, was "merely to vest the legal title of the land in the trustee for greater certainty and convenience of conveying the same to purchasers, and thereby avoiding the legal difficulties that would result should any of the grantors die leaving infant heirs." Consequently, George Lynn continued seized during his life as tenant in common of an equitable estate in fee, in all the property conveyed by said deed to Schley, except such as was sold; and the undivided equitable estate in fee of which said George died seized, descended upon his heirs at law, subject to the respondent's right of dower, of which she prayed the benefit, as if she had not united in the deed of trust, which, as she alleged, was executed for no other consideration, than to facilitate the transfer of the titles to various purchasers.

The questions presented by these conflicting pretensions are, first, whether there was any change in the character of the property described in the deed of trust, by virtue of its mere execution, on which depend, the subordinate questions, whether the appellee was entitled to a preference over other creditors, and to the exclusion of the appellants claim for dower.

As to the primary question, we may safely adopt the views of the Judge who decided this case below, and who, in his opinion, has very clearly announced the result of the best considered cases. "The inclination of Courts of Equity upon this branch of jurisprudence, is not generally to change the quality of the property unless there is some clear intention or act by which a definite character either as money or as land, has been unequivocally fixed upon it throughout. 2 *Story's Eq. Jur.*, sec. 1214. If this intention do not clearly appear, the property retains its original character, there being no equity between the heir and the next of kin in such cases; in construing instruments of this kind, Courts of Equity will regard the substance and

not the mere form of the agreement, and give to it the precise effect which the parties intended." 1 *Story Eq.*, sec. 791; 3 *Wheaton*, 335.

There can be no question as to the nature of the trust or the object of the parties in this case. They are indelibly stamped on the face of the deed and expressed in the most explicit terms, viz : " The said James W. Schley shall convey the said *legal* title so vested in him to the same by this conveyance, to such person or persons or company or companies, in such manner and under such restrictions as the majority shall direct him to do." Again " The said Jas. M. Schley is to receive no per centum or commission, all expenses of conveyancing, etc., to be borne by the parties of the first part, except said Edgerton, by first deducting the same out of the amount of the purchase money, the balance to be *distributed or divided among themselves* according to their respective rights to the same, it being the object of the said parties as to the last named land, merely to vest *the legal title of the same* in the said James M. Schley, for the greater certainty and convenience of conveyancing the same to purchasers, and thereby avoiding the legal difficulties that would result should any of the parties of the first part (except said Edgerton) die leaving infant heirs." It is further recited in said deed, " whereas, there are existing judgments and mortgages against some of the parties of the first part, which are liens on their respective shares of said property," it is enjoined upon the said Schley, John and Jas. Lynn, out of the proceeds of sale, instead of paying the same to the *cestuis que trust*, to apply the same to the extinguishment of said liens." They are further enjoined in the distribution of proceeds, to carry out and execute the provisions of the will of David Lynn, in regard to advancements to his several children, so as to produce equality.

There being no conversion of the real estate conveyed by the deed of trust to James M. Schley, the grantors in

said deed retained an equitable interest in the same until sold, and in its proceeds after sale, to the extent of their respective shares, which are to be treated as real estate. The next inquiry is, what rights or liens attached to this equitable estate either through the acts of the parties, or by operation of law. The Judge who decided this case below held it unnecessary to determine what title, if any, John G. Lynn had acquired to the land or its proceeds, but reserved the question until the proceeds might be brought into Court, but held the appellant was excluded from dower by the operation of the deed of trust in the lands as such. It is not distinctly declared in the decree, that she is not entitled to dower of the proceeds, but as such an inference may be drawn from it, we think it erroneous to that extent.

In the present attitude of these cases it becomes necessary to determine the relative rights of these parties.

On the 21st of October, 1852, John G. Lynn and George Lynn entered into articles of agreement under seal for the purchase by the latter, of four hundred shares of stock for the aggregate sum of $12,000. By these articles, it is agreed on the part of George Lynn, as additional security to the said John, that the agreement should operate as a lien and be binding in law on his interest in the Rose Hill Estate, including the Wharf and Cement property; that the said John shall, at any time he desires, have the agreement recorded in the clerk's office, and it shall be as binding in that respect as if recorded at the date of the instrument. The instrument does not appear to have been acknowledged before a Justice of the Peace or recorded.

As between parties and privies, this agreement was a pledge of the property or its proceeds, for the specific purpose to which it was dedicated, and gave the creditor a prior claim, to satisfaction out of the fund; it was in equity an assignment of the fund *pro tanto*, being made

for a valuable consideration. The appellant, as widow of George Lynn, claims a right of dower in the equitable estate of her husband by virtue of the Act of 1818, ch. 193, sec. 10, which enacts, "That *widows shall be entitled to dower in lands held by equitable title* in the husband, unless the same *be devised by a will made before the passage of this Act;* but such right of dower shall not operate to the prejudice of any claim for the purchase money of such lands, *or other lien on the same.*"

The first case in which the Act of 1818, ch. 193, sec. 10, was referred to by this Court, is that of *Hopkins et al., vs. Frey,* 2 *Gill,* 363. The facts of that case are, that Frey, the husband, acquired the land, of which the widow sought to be endowed in the year 1802, and executed a mortgage to secure the purchase money. In the year 1803, he married. In 1818, there was an arbitration between mortgagor and mortgagee, and an award, that upon payment of a sum ascertained, the mortgagees should release the mortgaged premises. The mortgagees filed their bill against the mortgagor for sale, "but the mortgagor relying upon the award, the bill was dismissed. In 1816, before the award, Frey mortgaged the equity of redemption to others, who afterwards filed a bill and obtained a decree to sell the premises, which were sold in July, 1823. The Court held the widow was not entitled to dower at common law, or under the Act of 1818, ch. 193, sec. 10, because the law was passed after the execution of the mortgage; *vide* 2 *Gill,* 365.

In the case of *Miller vs. Stump,* 3 *Gill,* 310, 311, this Court referred to the Act of Assembly in these words, "Our Act of Assembly of 1818, ch. 193, is the only law of Maryland, which gives the widow a right to dower in an equitable estate; and that Act as expounded by this Court in *Hopkins vs. Frey,* does not give the defendant in error, dower in this land. It was there decided, that the claim to dower in an equitable estate, can be asserted with

success only when the allowance of it cannot operate to the prejudice of any, but *creditors, heirs and devisees, in a will executed subsequently to the passage of the law.* It would operate to the prejudice of others, if in this case, when the equitable title had been parted with, by the husband, during his life, the widow was allowed dower. The Act of Assembly does not say and it ought not to be construed to mean, that the widow shall be "entitled to dower in lands held by equitable title in the husband" *at any time* during the coverture."

The husband Willson, (the mortgagor in that case) held the lands in fee by deed subject to the life estate, before the termination of which, he mortgaged the land and then applied for the benefit of the insolvent laws. The trustee afterwards sold the lands for a sum exceeding that due on the mortgage. It was held, the widow was not entitled to dower of the lands in specie, in the hands of the purchaser. As to the surplus of the proceeds, this Court held "In some cases, it may be argued, that the widow is entitled to a portion of the surplus. It is not necessary, however, upon this appeal, to enquire if such be the law of this case, if indeed, she be entitled to "receive anything, she is not entitled to receive it of the purchaser, and he is the only person of whom she is now claiming." This would imply if the application had been made for dower in the surplus, it would have been allowed. The same question was directly presented and decided by the late Chancellor Johnson, in the case of *Mantz vs. Buchanan*, 1 *Md. Ch. Dec.*, 205. In that case, the widow, although joining with her husband, the mortgagor, was allowed dower out of the surplus of the proceeds of sale, after satisfying the mortgage debt. The Chancellor said "there cannot be a question that, under the Act of Assembly of 1818, ch. 193, sec. 10, Mrs. Buchanan would, but for the proceedings on the Equity side of Washington County Court, be entitled to dower *to some extent in these*

*lands;* because, notwithstanding the mortgage, the equitable title was in the husband, and *the Act in terms declares, that widows shall be entitled to dower in lands held by such title,* and the question therefore is, whether such proceeding shall deprive her of this right, when it is obvious her title to the lands assigned her in that proceeding, must yield to the subsequent sale, to satisfy the mortgage.'' This language imports that the widow is entitled to dower out of *an equitable estate however created,* provided it is not to the prejudice of the vendor, or other lien attaching before her marriage or subsequently with her consent. Referring to the Act of Assembly again, and the nature of the liens embraced therein, the Chancellor proceeds, ''The Act of Assembly, however, makes no discrimination between the lien of the vendor and other liens. It says, '' such right of dower shall not operate to the prejudice of any claim for the purchase money of such lands, or other lien on the same.'' This other lien, if by the act of the husband without the concurrence of the wife, must, it is said, have reference to liens created prior to the marriage, and this it is thought is the sound construction. But if the wife does concur, by uniting in the mortgage or relinquishing her dower, the lien must be attended with the same consequences, as if created before the marriage, or residing in the vendor for the security of the purchase money.'' 1 *Md. Ch. Dec.*, 207.

In the case of *Stewart vs. Beard,* 4 *Md. Ch. Dec.*, 321, the widow was allowed dower out of an equitable estate of which her husband died seized in fee, in preference to a junior judgment creditor. The conclusion to be drawn from these decisions is that by virtue of the Act of 1818, ch. 193, sec. 10, the provisions of which are since incorporated into the Code of Public General Laws, the widow is entitled to dower out of an equitable estate of inheritance held by her husband, or not parted with at the time of his death, without prejudice to prior liens. The right

of dower has always been deemed a meritorious one, founded on the highest consideration, and favored in law. The object of the Act of 1818, was probably to remove that anomaly in the administration of justice, which allowed the husband of a *cestui que trust,* an estate by the curtesy, but denied dower to the widow—an inequality which was long considered a reproach to our jurisprudence.

It results from the preceding views, that the share or interest of the late George Lynn in all the estate conveyed by the deed of trust to James M. Schley is liable to be sold for the payment of his debts, in aid of his personal estate, that the said sale will be made free, clear and discharged of all claim of the parties to the cause ; the proceeds thereof to be applied first to the satisfaction of the lien of John G. Lynn, and the surplus to be subject to the claim of dower of Virginia Lynn, widow of said George, according to the rules of the Circuit Court, in relation to dower, in preference to all other liens not acquired prior to her marriage or created afterwards by her husband with her consent.   For these reasons, the decrees appealed from are reversed as far as the same conflict with the views hereinbefore expressed, and the cause is remanded.

*Decrees reversed*
*and cause remanded.*

(Decided 19th July, 1867.)