# Weeks *against* Haas.

If partition be made between tenants in common, who are *femes covert*, and mutual releases be executed to the husbands, they do not vest absolute estates in them, but only in trust for their wives. But if such releases do not recite the partition, but a moneyed consideration only, a purchaser without notice would take an absolute estate.

Written notice given to purchasers at a sheriff's sale may be proved by parol, without the production of the paper, there being no presumption that it was in the party's power to produce it.

ERROR to the Common Pleas of *Northumberland* county.

Mary Weeks against Jacob Byerly and Jacob Haas. This was an action of ejectment for a tract of land.

Henry Repley and his wife died seised of a tract of land, leaving issue, three children: John, Mary married to Jesse Weeks, and Elizabeth. They made a partition of the land into three parts. That which was allotted to Weeks and wife contained 71 acres; and for which this ejectment was brought. The parties executed mutual releases to each other. That to Jesse Weeks, after reciting the regular chain of title down to Henry Repley and to Margaret Repley, his wife, proceeded as follows: " who being so thereof seised, died intestate, leaving issue, three children, viz.: the said John, Mary, the wife of Jesse Weeks, and Elizabeth, the wife of Adam Gilger, to whom the same, by the laws of the com-

monwealth, did come. Now know ye that the said John Repley and Jane his wife, Adam Gilger and Elizabeth his wife, and in consideration of the sum of $91, to them in hand paid by the said Jesse Weeks, at and before the sealing and delivery thereof, the receipt whereof they do hereby acknowledge, and thereof acquit and for ever discharge the said Jesse Weeks, his heirs, executors and administrators, by these presents have, and each and every of them hath remised, released and for ever quit-claimed, and by these presents do, and each and every of them doth remise, release and for ever quit-claim unto the said Jesse Weeks, and to his heirs and assigns, all the estate, purparts and dividends, right, title, interest, property, claim and demand whatsoever, of them the said John Repley and Jane his wife, Adam Gilger and Elizabeth his wife, in law or equity or otherwise howsoever, of, in, to, or out of," &c. &c.; and concludes thus : " To have and to hold, all and singular, the premises hereby remised and intended so to be, with the appurtenances unto the said Jesse Weeks, his heirs and assigns, to the only proper use and behoof of the said Jesse Weeks, his heirs and assigns for ever."

It was proved that Jesse Weeks paid $91, the amount mentioned as the consideration of the deed, for owelty of partition. The land was levied and sold by the sheriff, as the property of Jesse Weeks, and purchased by Jacob Haas, the defendant. On the subject of notice, the following proof was given and evidence rejected :

James Porter, sworn. I was in the court-house when the property of Jesse Weeks was crying. I saw a notice in writing on the court-house door. Don't know who it was signed by. I don't know who it was put up by. I don't know whether Weeks was here at the time or not, but I think he was.

Mary Weeks, sworn. I don't know anything of any papers put up at the court-house door. There is none in my knowledge or possession. Never seen any such paper among my husband's papers.

The plaintiff offered to prove the contents of the paper spoken of by the witness, to wit : that bidders were notified that Jesse Weeks had only a life estate in the property then selling as his; that it belonged to his wife, Mary Weeks, as one of the heirs of John Repley, deceased ; and also, to prove that Haas had knowledge of this.

James Porter, sworn. I was here when the land was crying. I had no conversation with Haas. I read the notice.

This evidence was offered and rejected because it did not appear by whom the notice was put up, or by whom signed, or in whose behalf given; and because the notice itself was not produced, or its loss accounted for.

The court below was of opinion, that as to two-thirds of the land in controversy, Jesse Weeks was a purchaser, inasmuch as he derived title to it by virtue of the deed to him from the other

two heirs; but that as to the other third, he took in right of his wife; and therefore the plaintiff was entitled to recover the one undivided third of the land, and as to the other two-thirds, they directed a verdict for defendants.

*Jordan*, for plaintiff in error. The character of the deed which evidenced the partition between the parties, cannot affect the nature of their title. Such partition may have been by parol, but the parties adopted the safer way of locating their several parts by a writing. The Act of 1794 cast the inheritance upon the heir, and she has executed no deed by which she parted with her estate. *Alnatt on Part.* 53, 58; 9 *Watts* 336; 1 *Serg. & Rawle* 460; 6 *Serg. & Rawle* 267; 9 *Watts* 529; 10 *Watts* 136; 7 *Watts* 217.

The court should have received the evidence of notice at the sale.

*Donnell*, *contra*. Titles must be judged of by what appears upon their face : the defendant, therefore, is an innocent purchaser without notice. It is clear, that the estate of the wife could not be devested by any decree of the court; but it is equally clear that she was competent to join with her husband and devest herself of it. This she did, by joining in deeds to the other two heirs, by which she conveyed her one-third in that part of the land, in consideration that they would convey to her husband their interest in the land in controversy. He is therefore a purchaser from them, as to the interest at least which they had.

As to the exception to the rejection of the evidence. There was no proof of search for the paper.

The opinion of the Court was delivered by

GIBSON, C. J.—Principles of partition by decree of the Orphans Court, in which a wife is an involuntary party, may perhaps be inapplicable to her partition by deed, in which she has power to contract on her own terms, or not at all. The deeds in such case being *in pari materia* and made at the same time, constitute but one assurance; and the statute which gives her power to convey, makes her a free agent as to every part of it. Yet, what is there in the deed to the plaintiff's husband, to warrant the intendment of a gift of her land to him by means of it? By relinquishing her right in the two-thirds of her patrimony, she furnished the consideration for it; and as she was the party to be benefited, the object being partition and not conversion, the law raises a presumption that the husband took the legal title of her share as her trustee, for the same reason that it raises a resulting trust of land paid for with the money of another. With what did he pay? Certainly with his wife's land for all but an inconsiderable part of the value; and this land was as much her separate estate as

money settled to her separate use, which, had it been the consideration, would have given her an indisputable trust estate by implication of law. Why, then, shall not the law imply such a trust estate when her land has been conveyed in payment, and the object is not to part with the value of it, but to reserve or take back an equivalent? Such an implication is a matter of course in regard to a mortgage of the wife's land in which there is no limitation of the estate beyond the mere security, and the equity of redemption happens to be reserved to the husband. In that case, her original ownership is preserved on the legal presumption that the form of the reservation originated in the inaccuracy or mistake of the person who prepared the deed. To this effect is *Broad* v. *Broad*, (2 *Ch. Ca.* 98, 161), which is the leading case, and *Ruscombe* v. *Hare*, (6 *Dow's Parl. Cas.*) which is the latest one. In the decision of *Jackson* v. *Innes*, (1 *Bligh* 104), on appeal to the House of Lords, Lord Redesdale said, that whether the wife has joined in the mortgage because the estate belonged to her, or because she had a charge on it by jointure or dower, yet if there be a reservation in the proviso for redemption which would carry the estate from the person who was the owner of it at the execution of the mortgage, it is now an admitted principle of interpretation that there is a resulting trust *for that person*, whether husband or wife; and his position, as the result of the decisions, is sustained by *Cotton* v. *Cotton*, (2 *Ch. Rep.* 72); *Huntington* v. *Huntington*, (2 *Vern.* 437); *Brend* v. *Brend*, (1 *Vern.* 213); *Jackson* v. *Parker*, (*Amb.* 687); and by all the other decisions except that of Lord Eldon in the same case (16 *Vez.* 369), who was disposed to carry the protection of the wife still farther, and perhaps it is to be regretted that he was reversed. It is unnecessary to pursue the train of these decisions on mortgages, as those cited establish the principle of the case before us upon a just foundation; for to make the form of the conveyance the criterion, would give the husband a general power to dispose of the estate, and would commit his wife's property to the desperate protection of his generosity. She might, indeed, refuse to join with him except on terms of having her interest secured; but it is better to interpret these transactions on the presumption that she relied on his good faith, than to drive her to the verge of her power by compelling her to deal with him at arm's-length. Her dependence on him is more entire than the dependence incident to any other of the domestic relations; and the law relaxes its grasp on no means within its power, to prevent him from misusing it. Where it is her purpose to give him her land, the accomplishment of it by means of a conveyance to a convenient friend, cannot be prevented; yet the step is so obviously the consequence of the husband's avarice, that it is seldom to be commended. But certainly no such purpose is to be implied in the case before us; and, independent of parol evidence of intention, it is consonant with principle and authority to

hold him to be a trustee. On principles of general equity, adopted in *Foglesonger* v. *Somerville*, (6 *Serg. & Rawle* 270), the value of his beneficial interest did not exceed the sum paid by him for owelty of partition; and were this a contest between the plaintiff and his heirs, it would be a short one; but the defendant, Haas, claims to be a purchaser without notice.

Were the deed, under which both parties claim, strictly a release without consideration between co-heirs, perhaps it might suggest the existence of a partition so strongly as to put a purchaser on an inquiry into the particulars of the title. But though it is in the form, and has the peculiar words of a release, there was not the proper relation between the parties to let it operate as one. By our statute, the children of an intestate have several estates as tenants in common; and though joint tenants, or parceners, may release to each other, it seems that tenants in common cannot; because, as it is quaintly said in the *Touchstone*, (*p.* 327, *n.* 2), "they must pass their estate by feoffment, &c. because this estate being established by different notorieties, each having passed by distinct liveries, they must pass to each other by a distinguishing livery; or else it cannot be known in whom such parts are, which formerly had passed by a distinct livery." However technical the reason, it is enough that this deed cannot operate according to its terms; and by the principle that a conveyance which cannot take effect in the way it was intended, shall yet take effect, where it can, in some other way, this release in form becomes a bargain and sale in substance, by force of the pecuniary consideration stated in it. It is not meant to be intimated that mutual releases between tenants in common would be altogether void in any case. Between children of an intestate there would be the consideration of blood to give them effect as mutual covenants to stand seised; and where they could not operate at law, they would pass the estate as mutual agreements in equity. But what we have to do with at present, is the character which this deed would present to a purchaser; and no more is perceptible on the face of it than an ordinary sale without reference to any mutual conveyance as a consideration, the grantors styling themselves heirs of a common ancestor apparently to trace their title by descent. As it was an improper instrument to effect partition between the children of an intestate, the defendant had no reason to suppose the parties stood in that relation.

The pinch of the case, therefore, is the competency of the parol evidence to show the contents of the notice put up at the sheriff's sale. It was excluded because it did not purport to show by whom, or in whose behalf, it was put up; and because the paper itself was not produced, or its loss accounted for.

As the plaintiff's capacity to act for herself, was merged with her civil existence in that of her husband, he was the representative of her person and protector of her interest; and it was his

duty, on the particular occasion, to prevent her property from being involved in the ruin of his own. What is the presumption from this? The principle of *Williams* v. *The East India Company*, (3 *East* 192), and many other cases which it is unnecessary to quote, is that every act whose omission would implicate the party in a neglect of duty, shall be taken to have been performed, if there be not evidence to the contrary. It is on this principle that the entry of a younger brother, in the absence of the heir at the death of their common ancestor, is construed, in virtue of the relation between them, to be no tort to the heir, but a precautionary measure to prevent his seisin from being abated by strangers, (*Gilb. Ten.* 28), and the presumption is, that he entered for that purpose. How much more cause is there for a presumption of beneficial interference in this instance? The husband would have been doubly guilty of an abandonment of duty had he suffered his wife's property to be sacrificed for want of a declaration of trust which he had negligently taken in his own name, in the first instance, when the omission could be supplied by a delaration on the spot; and such a dereliction is not to be imputed to him without proof. Perhaps the presumption of notice, in such a case, would stand for *primâ facie* evidence of it, even without corroboration from circumstances. In *The King* v. *The Inhabitants of Haslingfield*, (2 *M. & S.* 558), an award of commissioners under an enclosure Act, that a particular highway was in another parish, was rejected at the trial of an indictment for not repairing it, because there was no direct proof that the commissioners had given the notice required by the Act, before they proceeded to ascertain the boundaries; but it is remarked that the presumption of notice was rebutted by the fact that the inhabitants had continued to repair as usual, after the award was made; else the court would have presumed the commissioners had done their duty. However that may be, such a presumption certainly may supply the place of a circumstance in regard to a notice actually put up, and probably by a person since dead. On the principle of *Barnes* v. *M'Clinton*, (3 *Penn. Rep.* 67), in which a notice read out at the sheriff's sale by the claimant's attorney was allowed to affect the purchaser, the bidders in this case knowing, as they did, this husband to be the guardian of the plaintiff's rights, were bound to suppose the notice was put up by him without regard to the want of a signature; and such a supposition accords with those natural presumptions of mere fact which are thought to be recognised by the law as being derived from the course of nature and the habits of society. The very publication of a written notice by reading it or sticking it against the wall at the place of sale, as in *Barnes* v. *M'Clinton*, would affect the purchaser, if the publisher was there to answer questions; and the witness thinks the plaintiff's husband attended at the sale. This principle is not contradicted in *Epley* v. *Witherow*, (7 *Watts* 167), where what was at most an obscure

hint by the crier, which pointed to no dormant interest or claimant in particular, and which intimated no more than it was the business of the bidders to know without it, was properly disregarded. Had the existence of the particular title been disclosed, the consequence must have been different.

Then it is sufficient to account for the non-production of the notice itself, that it is unusual to preserve such papers; for in settling principles of jurisprudence, we must respect the habits and convenience of the community. To insist on the production of such a paper, or evidence to account for its loss, when it may have been secretly torn down and destroyed, as it was in the case of *Barnes* v. *M'Clinton*, would put the claimant at the mercy of the judgment creditor, whose interest it is to suppress it. It might be impossible to remove it; and a copy would be open to the same objection, for want of originality, that might be made to parol evidence. But it has not been suggested that a copy was kept in this instance; nor is there anything to create a suspicion that there was better evidence of the contents in the plaintiff's power. The evidence ought, therefore, to have gone to the jury with a direction to 'find for the plaintiff, if it made out the fact of notice, an undivided interest proportionate to the part of the consideration which was furnished by her.

Judgment reversed, and *venire de novo* awarded.